IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 97-cv-1308-WDM-PAC (Consolidated with cases numbered:
97-cv-1435-WDM-PAC, 97-cv-1446-WDM-PAC, 97-cv-1514-WDM-PAC,
97-cv-1562-WDM-PAC, 97-cv-1574-WDM-PAC, 97-cv-1609-WDM-PAC,
97-cv-1610-WDM-PAC, 97-cv-1619-WDM-PAC, 97-cv-1644-WDM-PAC,
97-cv-1680-WDM-PAC, 97-cv-1701-WDM-PAC, 97-cv-1711-WDM-PAC,
97-cv-1731-WDM-PAC, 97-cv-1812-WDM-PAC, 97-cv-1815-WDM-PAC,
97-cv-1822-WDM-PAC, 97-cv-1838-WDM-PAC, 97-cv-1891-WDM-PAC,
97-cv-1997-WDM-PAC, 97-cv-2321-WDM-PAC, and 98-cv-498-WDM-PAC)

In re BOSTON CHICKEN, INC. SECURITIES LITIGATION

**ORDER CONCERNING ATTORNEY FEES AND EXPENSES**

Miller, J.

This matter is before me on Plaintiffs' Motion for Attorney Fees and Expenses (Docket No. 354). Final judgment was entered on July 31, 2006, and it is necessary to resolve this motion to permit distribution of settlement funds to the class. The motion is supported by several declarations of counsel as well as the affidavits or declarations of independent attorneys in support of the motion, the latest being from Professor J. Robert Brown, Jr. (Brown) (Docket No. 356) and the others being from Raymond P. Mickelwright (Mickelwright) (Docket No. 224) and John C. Coffee, Jr. (Coffee) (Docket No. 223).

Plaintiffs' counsel seek an attorney fees award of 29% of the settlement fund which totaled $23,586,408 in the first week of June ($6,840,058),[1] together with costs in

---

[1] The settlement continues to accrue interest. For ease of reference I will use this figure for the settlement fund calculations contained in this order even though the total amount is obviously earning a significant amount of interest on a daily basis.

the amount of $626,068 for a total recovery of $7,466,126. The Plaintiffs' Lodestar calculation of their hours and rates totaled $5,623,376. In effect, according to broad brush measurements customarily used in determining fee and expense awards, Plaintiffs' total request represents 32% of the settlement fund or a 1.22 multiplier of the Lodestar.

Before discussing the attorney fee request, I note that there is no dispute concerning the requested reimbursement of costs. This amount is to be paid to each named Plaintiff, including the Teachers' Retirement System of Louisiana, in addition to each Plaintiff's *pro rata* share, if any, of the settlement fund.

Turning to the attorney fees, settlement deprives me of the checks and balances of the adversary system, particularly here, where defense counsel took no position at the hearings. Consequently, I become the guardian of the class members' interests *vis à vis* the economic self-interest of their attorneys. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988); *Strong v. Delsouth Telecommunications, Inc.*, 137 F.3d 834, 850 (5th Cir. 1998). Accordingly, I must examine the facts and circumstances of this case to determine whether the requested fees are fair and reasonable.

Counsel's basic argument is that a 30% fee is commonplace in common fund cases and may even be the standard in the Tenth Circuit. *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Counsel rely on the affidavits of independent counsel as well as the lack of objection from members of the class.

I begin my consideration with reference to the notice of the proposed settlement

given to the class.   It informed the class that counsel may seek "up to 30% of that Settlement Fund, together with interest earned on those funds, after deducting for expenses."  The class was advised, therefore, that counsel would seek a percent of the fund after expenses had been paid.  That parameter should be respected by limiting counsel's request to 29% of the net settlement fund after deducting the expense reimbursement, or $6,658,498 ($23,586,408 - $626,068 = $22,960,340 X .29 = $6,658,498).

Next, I decline to make a reasonable fee determination simply by applying an arbitrary fixed percentage without consideration of the circumstances of the case.  The Lodestar calculations at least provide me with a useful measuring rod to determine reasonableness of the fee.  See *Gottlieb v. Barry*, 43 F.3d at 483; *Rosenbaum v. McAllister*, 64 F.3d 1439, 1447 (10th Cir. 1995).  The Lodestar helps me avoid unreasonable or unconscionable attorney fee awards.

Plaintiffs' Lodestar submittals indicated a total of 14,614 billable hours were charged, resulting in the total fees claimed of $5,623,376 for a blended hourly rate of $385 per hour.

Addressing the reasonableness of the hours, Professor Brown noted that some inefficiencies were inevitable given involvement of 37 law firms (ultimately reduced to 9).  Professor Brown suggests a 10% across the board reduction to account for such inevitable inefficiencies to a new Lodestar of $5,061,038 ($5,623,376 X .9 = $5,061,038).  Brown affidavit at p. 10.  Professor Brown also recommended a further 25% discount of the Lodestar amount of $839,619 charged by 28 law firms that were

not designated as lead counsel.  That would result in further reducing the Lodestar calculation by $188,915 to a net figure of $4,872,123.  Brown affidavit at ¶. 11-12.

With regard to the reasonableness of hourly rates, the normal standard is the local rate but in an unusual case higher rates may be justified for out-of-town counsel. *Gottlieb,* 483 F.3d at 485, fn 8.  Plaintiffs argue this applies here, and Professor Brown agrees.  Brown affidavit at ¶. 12-13.  He opines that Plaintiffs' counsel were of a comparatively small group of law firms that can effectively prosecute security fraud cases.  From my experience, however, I conclude that Denver firms are also capable of this type of practice.  Expert counsel notes that several firms deal with complex litigation with rates from $275 per hour to $495 per hour.  Specifically, Denver area attorneys with complex class action experience charge between $325 and $535 per hour. Mickelwright Affidavit at ¶. 7-8.  On the other hand, Professor Brown notes that large regional firms in Denver charge as much as $565 an hour, somewhat less than Plaintiffs' highest hourly rate of $650 per hour.  Professor Brown suggests using $565 per hour as a maximum rate and reducing all hours charged in excess to that base level, which would result in a downward adjustment in the Lodestar of $76,810.  Brown affidavit at 15.

At least some of the adjustments suggested by Plaintiffs' expert counsel appear reasonable to eliminate duplication and inefficiencies in the hours charged as well as reducing the hourly rate to the highest level charged in the Denver locale.  The suggested 10% reduction is reasonable.  The additional 25% reduction for non-lead counsel seems to be a duplicative discount that unduly limits the hours charged.  On

4

the other hand, placing a cap on the hourly rates to the highest charged in Denver is a reasonable adjustment. Such adjustments would result in further reducing the adjusted Lodestar to $4,984,228 ($5,623,376 X .9 = $5,061,038 - $76,810 = $4,984,228). Even with those adjustments the rates remain significantly higher than Denver rates. (The blended rate would be $341 for all legal time).

Applying this adjusted *Lodestar* number of $4,984,228 to the requested 29% recovery, or $6,658,498, results in a multiplier of 1.34 which would be well within the multiplier of 1.90 found in a summary of recent attorney fee awards. *See* Class Action Reports (2003) at p. 167. The same survey, however, found that fees <u>and costs</u> as a percentage of total recovery between $20 million and $30 million was 25.8 %. Here that percentage yields $6,085,293 for fees <u>and</u> costs or $5,459,225 in fees after deducting the uncontested cost figure. Such a recovery would reduce the multiplier to 1.10.

These considerations provide me a range of reasonable fees from something less than $5 million, an amount of an adjusted *Lodestar* based on hourly rates that are still very high compared to Denver rates, up to $6.6 million based on counsel's request of 29%. After consideration of the so-called *Johnson* factors, articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), which have been adopted in this circuit, *see Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849 (10th Cir. 1993), I conclude that a recovery at the higher range should be approved. Several of the *Johnson* factors weigh in favor of a higher rate. Certainly this was a difficult case calling for high skill of legal service and experienced attorneys. A

significant amount of time was required over a prolonged period as the consequence of bankruptcy, judicial delays, and other complicating factors. This was a true contingency and the recovery should be viewed as favorable, confirmed by the lack of objection to the settlement. Even though the attorney fee award is enhanced by interest earned, the delay in payment and loss of use of funds justifies a recovery approaching 30%. Finally, as counsel have argued, a higher recovery would be consistent with awards in similar cases.

Accordingly, it is ordered:

1. Plaintiffs' counsel are awarded attorney fees in the amount of $6,500,000 and expenses in the amount of $626,068, together with interest from June 1, 2006, at the rate of interest earned by the settlement fund.

2. The amounts shall be paid to lead counsel to be disbursed in accordance with the Final Judgment.

DATED at Denver, Colorado, on August 10, 2006.

BY THE COURT:

s/ Walker D. Miller
United States District Judge